PD-0162-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/23/2015 4:16:08 PM
Accepted 2/23/2015 4:22:25 PM
ABEL ACOSTA
CLERK

## Case Number: PD-0162-14

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

## BRANDON SCOTT BLASDELL
### Appellant,

## V.

## THE STATE OF TEXAS
### Appellee

---

# BRANDON SCOTT BLASDELL'S BRIEF ON THE MERITS

---

## APPEALED FROM THE 9th DISTRICT COURT OF APPEALS
## BEAUMONT, TEXAS
## CASE NUMBER: 09-09-286-CR
### 9th District Court, Montgomery County, Texas
### Trial Court Cause No. 07-11-11972-CR

---

Oral argument requested

Jeremy S. Dishongh
SBOT No. 24043635
Law Offices of Jeremy Dishongh
332 N. Main Street
Conroe, Texas 77301
Telephone: 936-494-1133

Facsimile: 936-494-1233

## Identities of Parties and Counsel

Judge:

Honorable K. Michael Mayes
301 North Main Street
Conroe, Texas 77301
Phone: 936-539-7860

Appellant:

Mr. Brandon Scott Blasdell
TDCJ Number: 1639101
Dolph Briscoe Unit
1459 Highway 85
Dilley, Texas 78017

Appellant's Attorney:

Mr. Jeremy S. Dishongh
Law Offices of Jeremy Dishongh
SBOT No. 24043635
332 North Main Street
Conroe, Texas 77301
Phone: 936-494-1133

Appellee's Attorney:

Mr. Brett Ligon
Montgomery County District
Attorney
SBOT No. 00796955
Mr. William Delmore
Montgomery County District
Attorney's Office
SBOT No. 05732400
207 West Phillips
Conroe, Texas 77301
Phone: 936-539-7800

Defense Attorney:

Mr. Jarrod Walker
Attorney at Law
SBOT No. 00788601
223 Simonton Street
Conroe, Texas 77301

i

Phone: 936-539-3335

Prosecuting Attorney:

Ms. Sylvia Yarborough
Montgomery County District
Attorney's Office
SBOT No. 22129500
207 West Phillips
Conroe, Texas  77301
Phone: 936-539-7800

## Table of Contents

Identities of Parties and Counsel...............................................................i

Issue Presented ...............................................................................1

Statement of the Case ........................................................................1

Statement of Facts ...........................................................................3

Summary of the Argument .....................................................................7

Argument ....................................................................................8

Standard of Review ..........................................................................8

Admissibility of Expert Testimony ...........................................................9

The Court of Appeals Erred in Holding That Blasdell Failed to Establish the Reliability of the Eyewitness Identification Expert's Testimony on Weapon Focus Effect.........................................10

Conclusion and Prayer.......................................................................13

# Index of Authorities

## Cases

*Blasdell v. State*, 384 S.W.3d 824 (Tex. Crim. App. 2012)......................2
*Ex Parte Blasdell*, No. AP–76697 (Tex. Crim. App. Nov. 23, 2011) ........2
*Davis v. State*, 329 S.W.3d 798 (Tex. Crim. App. 2010)........................8
*New Jersey v. Henderson*, 208 N.J. 208, 27 A.3d 872 (2011) ...............10
*Russeau v. State*, 291 S.W.3d 426 (Tex. Crim. App. 2009) ....................8
*Tillman v. State*, 354 S.W.3d 425 (Tex. Crim. App. 2011) ...................10
*Vela v. State*, 209 S.W.3d 128 (Tex. Crim. App. 2006)......................9, 10
*Weatherred v. State*, 15 S.W.3d 540 (Tex. Crim. App. 2000)...............8, 9
*Blasdell v. State*, 420 S.W.3d 406 (Tex. App.–Beaumont 2014) ....2, 7, 11
*Blasdell v. State*, No. 09-09-00286-CR, 2010 WL 3910586
(Tex. App.–Beaumont, Oct. 6, 2010)
(not designated for publication)...................................................2

## Statutes

Tex.R. Evid. 104(a).............................................................9, 10
Tex.R. Evid. 401 ................................................................9, 10
Tex.R. Evid. 402 ................................................................9, 10
Tex.R. Evid. 702 ................................................................9, 10

## Other Authorities

Saul M. Kassin et al., On the "General Acceptance" of
   Eyewitness Testimony Research: A New Survey of
   the Experts, 56 AM. PSYCHOLOGIST 405, 407 (2001)....................10

## Issue Presented

For expert testimony to be admissible, a trial judge must make inquiries into the witness's qualification, reliability of the testimony, and relevanceof the testimony.The trial judge erroneously determined that testimony was not relevant and did not address reliability. Where testimony was relevant, did the court of appeals err by holding that Blasdell failed to establish reliability?

## Statement of the Case

This is an appeal of a judgment of conviction for Aggravated Robbery and sentence of confinement in the Texas Department of Criminal Justice Institutional Division for thirty years.[1]

Brandon Blasdell was charged by indictment with the offense of Aggravated Robbery, alleged to have been committed on or about February 11, 2007, in Montgomery County, Texas.[2]

On June 17, 2009, a jury found Blasdell guilty and the Court sentenced him to confinement in the Texas Department of Criminal Justice Institutional Division for a term of 30 years.[3]

---

[1]Clerk's Rec. vol. I, at 59, 60-62, 69.
[2] Clerk's Rec. vol. I, at 4.

1

On June 19, 2009, Blasdell gave Notice of Appeal.[4]

The Court of Appeals affirmed the trial court's judgment of conviction and sentence on October 6, 2010.[5]

On November 23, 2011, The Court of Criminal Appeals granted Blasdell's Application for Writ of Habeas Corpus seeking permission to file an out of time petition for discretionary review.[6]

On December 5, 2012, the Court of Criminal Appeals reversed the judgment of the court of appeals, holding that Blasdell's expert's testimony on weapon focus effect was relevant.[7] The Court of Criminal Appeals remanded the case to the court of appeals for analysis of whether the expert's testimony was reliable.[8]

On January 8, 2014, the court of appeals concluded that the expert's testimony was not reliable, and affirmed the judgment of the trial court.[9]

---

[3] Clerk's Rec. vol. I, at 60-62.
[4] Clerk's Rec. vol. I, at 75-76.
[5] *Blasdell v. State*, No. 09–09–00286–CR, 2010 WL 3910586 (Tex. App.–Beaumont, Oct. 6, 2010)(not designated for publication).
[6] *Ex Parte Blasdell*, No. AP–76697 (Tex. Crim. App. Nov. 23, 2011).
[7] *Blasdell v. State*, 384 S.W.3d 824, 831 (Tex. Crim. App. 2012).
[8] *Blasdell v. State*, 384 S.W.3d 824, 831 (Tex. Crim. App. 2012)
[9] *Blasdell v. State*, 420 S.W.3d 406, 411-412 (Tex. App.–Beaumont 2014).

On October 15, 2014, the Court of Criminal Appeals granted Blasdell's petition for discretionary review.

Brandon Blasdell now files his brief on the merits.

## Statement of Facts

On February11, 2007, Katy Hadwin stopped at a Citgo on the I-45 feeder in Conroe to put gasoline in her Ford Escape.[10] A man in a white pickup truck pulled up pointed a pistol in her face, and demanded her purse.[11] Ms. Hadwingave her purse to him and he left in his pickup truck.[12] Ms. Hadwin called 911.[13]

Ms. Hadwin said she had an opportunity to view her assailant's face.[14] She said he hadunibrow. "It looked like he had only one eyebrow instead of two."[15] Ms. Hadwin met with Detective Juan Sauceda, who showed her a photographic lineup.[16] She identified Blasdell as her assailant, stating that she "was 100 percent sure."[17] Ms. Hadwin again

[10] Reporter's Rec. vol. III, at 66, 69-70; *Blasdell*, 2010 WL 3910586, *1.

[11] Reporter's Rec. vol. III, at 71-73, 78; *Blasdell*, 2010 WL 3910586, *1.

[12] Reporter's Rec. vol. III, at 73; *Blasdell*, 2010 WL 3910586, *1.

[13] Reporter's Rec. vol. III, at 73-74; *Blasdell*, 2010 WL 3910586, *1.

[14] Reporter's Rec. vol. III, at 71; *Blasdell*, 2010 WL 3910586, *1.

[15] Reporter's Rec. vol. III, at 71-72; *Blasdell*, 2010 WL 3910586, *1.

[16] Reporter's Rec. vol. III, at 37-39, 74-77; *Blasdell*, 2010 WL 3910586, *1.

[17] Reporter's Rec. vol. III, at 77; *Blasdell*, 2010 WL 3910586, *1.

identified Blasdell at trial as the man who robbed her on February 11, 2007, saying, "I can't forget his face."[18]

Dr. Steven Rubenzer, a forensic psychologist, testified for Blasdell.[19] Dr. Rubenzer stated that he had read 85 to 90 peer-reviewed articles on eyewitness identification, but he had not authored any peer-reviewed articles.[20] In preparation for testifying in Blasdell's defense, Dr. Rubenzer reviewed the photographic array that Detective Sauceda showed to Ms. Hadwin and the "Suspect Identification Form" Ms. Hadwin completed[21] Dr. Rubenzer did not meet with Ms. Hadwin or Detective Sauceda. [22] Dr. Rubenzer testified that he hoped to be informed about the procedures the police followed in this case "Perhaps by hypothetical questions from the attorney."[23] When asked whether he thought that it would be important to speak to the officer who administered the photographic lineup, Dr. Rubenzer stated, "I'm not

---

[18] Reporter's Rec. vol. III, at 77-78; *Blasdell*, 2010 WL 3910586, *1.
[19] Reporter's Rec. vol. IV, at 5-90; *Blasdell*, 2010 WL 3910586, *2.
[20] Reporter's Rec. vol. IV, at 6, 7, 14; *Blasdell*, 2010 WL 3910586, *2.
[21] Reporter's Rec. vol. IV, at 12; State's exhibits 1, 2; *Blasdell*, 2010 WL 3910586, *2.
[22] Reporter's Rec. vol. IV, at 12; *Blasdell*, 2010 WL 3910586, *2.
[23] Reporter's Rec. vol. IV, at 12; *Blasdell*, 2010 WL 3910586, *2.

aware of anyone who does that in this field, probably on the notion that witnesses will be reluctant to talk with us."[24]

At trial, Blasdell sought to offer expert testimony on various subjects, including weapon focus effect, cross-race identification, the person who administered the lineup knowing the identity of the suspect, the admonishment given by the person who presented the photo array, the sequence in which the witness was interviewed and the photo array was prepared, time lapse between the event and the administering of the photo lineup, the ability to provide a description of eyes, which indicated how long a witness observed a face.[25] During the hearing on what causes of eyewitness identification errors Dr. Rubenzer would be allowed to testify about, the trial court was primarily concerned with relevance.[26] When the trial court queried Dr. Rubenzer, the questions were geared towards establishing relevance.[27] The trial court did not inuire into reliability of any of the eyewitness identification errors that Blasdell sought to offer testimony on.

[24] Reporter's Rec. vol. IV, at 12; *Blasdell*, 2010 WL 3910586, *2.
[25] Reporter's Rec. vol. IV, at 19-59.
[26] Reporter's Rec. vol. IV, at 8-70, 53-55.
[27] Reporter's Rec. vol. IV, at 53-55.

The trial court found that the science of eyewitness identification was an accepted science and was a proper subject for expert testimony, and that identification was an issue in this case[28] On the issue of relevance of the expert's testimony, the trial court allowed the expert to testify about the admonishments the interviewing detective gave the witness during administration of the photo spread, the witness's description of the assailant's eyes, and whether the photograph lineup was prepared before it was discussed with the witness.[29] The trial court also ruled that the expert could testify about time lapse between the event and the administration of the photo spread and cross-race identification.[30] The trial court ruled that expert testimony on the "weapon focus effect" was inadmissible.[31] The trial court based its ruling on the fact that Dr. Rubenzer did not have an opinion or his opinion was not relevant, that it would not assist the trier of fact or were sufficiently tied to the pertinent facts of the case.[32] Dr. Rubenzer's testimony on

---

[28] Reporter's Rec. vol. IV, at 58.
[29] Reporter's Rec. vol. IV, at 58-59.
[30] Reporter's Rec. vol. IV, at 60.
[31] Reporter's Rec. vol. IV, at 82.
[32] Reporter's Rec. vol. IV, at 60.

weapon focus effect would not "provide information that the jury doesn't have anyway," the trial court ruled.[33]

On remand, the Court of held that Blasdell did not establish that Dr. Rubenzer's testimony on weapon focus effect was reliable.[34]

While Dr. Rubenzer generally described the weapon focus effect, he did not

describe the principles that apply to it . . . . Without any further basis to explain the topic's principles beyond the mere *ipse dixit* of Dr. Rubenzer, the trial court was not in a position to properly evaluate whether Dr. Rubenzer had either properly stated or applied the principles that govern the weapon focus effect to Blasdell's case. [35]

## Summary of the Argument

During the hearing before the trial court on the eyewitness identification expert's testimony on eyewitness identification error, the trial court's focus was on the relevance of Blasdell's expert witness's proffered testimony. The trial court did not assess or rule on the

---

[33] Reporter's Rec. vol. IV, at 60.
[34] *Blasdell*, 420 S.W.3d at 411.
[35] *Id.*

7

reliability of any of the testimony, including the weapon focus effect testimony. The trial court did not give Blasdell an opportunity to demonstrate the reliability of any aspect of eyewitness identification that Dr. Rubenzer would testify about. The court of appeals erred by holding that Blasdell failed to demonstrate the reliability of the testimony, and should have remanded the case to the trial court for a hearing on reliability.

## Argument

### Standard of Review

A trial judge's decision on the admissibility of evidence is reviewed under an abuse of discretion standard and will not be reversed if it is within the zone of reasonable disagreement. [36] A trial court's determination of a witness's qualifications as an expert and its decision to exclude expert testimony are reviewed for an abuse of discretion.[37] If the trial court's ruling lies within the zone of reasonable disagreement, the trial court's ruling will be upheld.[38]

---

[36] *Davis v. State*, 329 S.W.3d 798, 813–14 (Tex. Crim. App. 2010); *Russeau v. State*, 291 S.W.3d 426, 438 (Tex. Crim. App. 2009).
[37] *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).
[38] *Id.*

## Admissibility of Expert Testimony

Before admitting expert testimony, a trial court must evaluate the qualification of the witness, the reliability of the testimony, and the relevance of the testimony.[39] Rule 702 of the Texas Rules of Evidence provides, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, training, or education may testify thereto in the form of an opinion or otherwise."[40] The proponent of expert testimony must show by clear and convincing proof that the evidence he or she seeks to introduce is sufficiently relevant and reliable to assist the trier of fact in accurately understanding other evidence or in determining a fact at issue.[41] Texas Rules of Evidence 104(a), 702, 401, and 402

[R]equire a trial judge to make three separate inquiries, which must all be met before admitting expert testimony: "(1) the witness qualifies as an expert by reason of his knowledge, skill,

---

[39] See *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006); Tex.R. Evid. 104(a); Tex.R. Evid.702; Tex.R. Evid. 401, 402.
[40] Tex.R. Evid. 702.
[41] *Weatherred*, 15 S.W.3d at 542.

experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case." These conditions are commonly referred to as (1) qualification, (2) reliability, and (3) relevance.[42]

In *Tillman v. State*, the Court of Criminal Appeals observed that the Supreme Court of New Jersey acknowledged that, in a survey of experts, ninety percent or more found that research on a number of causes of eyewitness identification error, including weapon focus, was reliable.[43]

## The Court of Appeals Erred in Holding That Blasdell Failed to Establish the Reliability of the Eyewitness Identification Expert's Testimony on Weapon Focus Effect

The court of appeals held that Dr. Rubenzer did not properly state or apply the principles that governed the weapon focus effect in

---

[42] *Vela*, 209 S.W.3d at 131 (citing *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim.App., 2006)); see Tex. R. Evid. 104(a), Tex. R. Evid. 702, Tex. R. Evid. 401, Tex. R. Evid. 402.

[43] *Tillman v. State*, 354 S.W.3d 425, 437-438 (Tex. Crim. App. 2011) (citing *New Jersey v. Henderson*, 208 N.J. 208, 27 A.3d 872, 911-912 (2011)) (citing Saul M. Kassin et al., *On the "General Acceptance" of Eyewitness Testimony Research: A New Survey of the Experts*, 56 AM. PSYCHOLOGIST 405, 407 (2001)).

Blasdell's case.[44]The trial court was primarily concerned with relevance, and did not make inquiry into reliability.[45]During the hearing, Blasdell did not establish the reliability of any of the other theories that Dr. Rubenzer testified about, and yet the trial court allowed testimony on those areas of eyewitness identification.[46] During the hearing in the trial court, Dr. Rubenzer did not state or apply the principles that governed any eyewitness identification errors, such as the admonishments the interviewing detective gave the witness while showing a photo spread, the witness's description of the assailant's eyes, whether the photograph lineup was prepared before it was discussed with the witness, and time lapse between the event and the administration of the photo spread and cross-race identification.[47] Yet the trial court allowed him to testify about these eyewitness identification errors. The trial court posed questions to Dr. Rubenzer, and inquired about the relevance of the testimony, but it did not query him about the reliability of the testimony Blasdell sought to offer.[48]

---

[44]*Blasdell*, 420 S.W.3d at 411.
[45] Reporter's Rec. vol. IV, at 28-29.
[46] Reporter's Rec. vol. IV, at 58-60.
[47] Reporter's Rec. vol. IV, at 58-59, 60.
[48]Reporter's Rec. vol. IV, at 48-57.

11

The trial court found that Dr. Rubenzer's expert testimony on admonishments administered by the detective to the witness, the witness's description of the assailant's eyes, and whether the photograph lineup was prepared before it was discussed with the witness, time lapse between the event and the administration of the photo spread, cross-race identification was relevant, and presumably reliable, and allowed him to testify about those eyewitness identification errors. But Dr. Rubenzer did no more or no less to describe or explain the scientific principles of weapon focus effect as he did the eyewitness identification errors he was allowed to testify about. The trial court did state that Blasdell needed to establish Dr. Rubezner's expertise in the field, that he "would need some kind of personal involvement or some kind of personal knowledge, studies or peer reviewed article, et cetera," but the trial court was more concerned with relevance.[49]

[T]hat's what the relevance issue is all about . . . . I need to hear what – what he's got to offer specifically about the facts of this case based on whatever he's basing it on so I can see if there is a

---

[49]Reporter's Rec. vol. IV, at 23-24.

link and a tie, nexus, so to speak, LexisNexis, and then a –
relevant to the issues that we're talking about.[50]

Blasdell didn't fail to prove the reliability of Dr. Rubenzer's testimony on weapon focus effect. The trial court forestalled any discussion of the reliability. The court of appeals erred in ruling that Dr. Rubenzer's testimony on the "weapon focus effect" was not reliable.

## Conclusion and Prayer

The court of appeals erred by holding that Blasdell failed to prove the reliability of the expert's testimony about "weapon focus effect." Brandon Blasdell respectfully requests the Court to consider his arguments and authorities and grant him relief in the form of a reversal of the judgment of the Court of Appeals and remand to the Court of Appeals for a harm analysis, or, in the alternative, remand to the trial court for a hearing on reliability.

Respectfully Submitted,

Law Office of Jeremy S. Dishongh
332 N. Main Street
Conroe, Texas 77301

---

[50]Reporter's Rec. vol. IV, at 28-29.

13

936-494-1133
936-494-1233 Facsimile

By: _____
Jeremy S. Dishongh
State Bar No.: 24043635
Attorney for Appellant

## Certificate of Service

I certify that a true and correct copy of the above brief on the merits was served on the State Prosecuting Attorney and the Montgomery County District Attorney via the electronic filing manager, on the 23rd day of _Feb. 2015_ .

_____
Jeremy Dishongh

## Certificate of Compliance

Per Texas Rules of Appellate Procedure Rule 9.4(i)(1) and (3), I certify that Brandon Scott Blasdell's appellant's brief contains __2,693__ words.

_____
Jeremy Dishongh